IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION


NIGEL K. WASHINGTON,             §
                                 §
            Plaintiff,           §
                                 §
v.                               §        CIVIL ACTION NO. H-08-1806
                                 §
BLANCHARD CONTRACTORS, INC.,     §
                                 §
            Defendant.           §


MEMORANDUM OPINION AND ORDER


Pending before the court is defendant Blanchard Contractors, Inc.'s ("Blanchard") Motion for Summary Judgment and Memorandum in Support Thereof (Docket Entry No. 16).  In response, plaintiff Nigel K. Washington filed Plaintiff's Response to Motion for Summary Judgment (Docket Entry No. 20).  For the reasons stated below, Blanchard's motion for summary judgment will be granted as to Washington's Jones Act claim and his general maritime law claims for unseaworthiness and maintenance and cure.  The court will deny Blanchard's motion as to Washington's claim for negligence under the Longshore Harbor Worker's Compensation Act ("LHWCA") and his claim for negligence under the general maritime law.


## I.  Background

Nigel Washington's brief career with Blanchard ended abruptly after he allegedly suffered an on-the-job back injury the night of

June 6, 2007.  Washington worked for Blanchard for a total of only

thirty-seven days.[1]  He was hired to be a rigger[2] -- a person who

assists with crane operations.[3]  During his first thirty-one days

with Blanchard, Washington worked at a terrestrial gas plant in

Venice, Louisiana.[4]  His work at the gas plant did not involve any

vessels.[5]  The crew with which Washington was working at the gas

plant was scheduled to have several days off.[6]  Washington

requested that he be assigned to another job so that he could

continue working and earning wages instead of taking the days off.[7]

Blanchard accommodated Washington by assigning him to work on the

"West Bay" project.[8]

---

[1]Motion for Summary Judgment and Memorandum in Support Thereof, Docket Entry No. 16, at 2, Exhibit A.

[2]Id. at 2; Oral and Videotaped Deposition of Nigel K. Washington, at 36 (Jan. 15, 2009) (included in Motion for Summary Judgment and Memorandum in Support Thereof, Docket Entry No. 16, at Exhibit C).

[3]Oral and Videotaped Deposition of Nigel K. Washington, at 36-37.

[4]See Affidavit of Dennis Vegas, ¶ 4 (March 18, 2009) (included in Motion for Summary Judgment and Memorandum in Support Thereof, Docket Entry No. 16, at Exhibit B); Motion for Summary Judgment and Memorandum in Support Thereof, Docket Entry No. 16, at 2, Exhibit A.

[5]Affidavit of Dennis Vegas, ¶ 4.

[6]Id. at ¶ 5.

[7]Id.

[8]Id.

Washington worked at the West Bay site for five days, from June 2, 2007, to June 6, 2007.[9]  Although the record does not reveal the type of work Washington performed at the West Bay site, Blanchard concedes that the West Bay project involved vessels.[10] On June 6, 2007, Washington and other personnel were assigned to man a flotilla of four vessels -- two barges and two tugboats -- in order to transport them from the West Bay site to Grand Isle, Louisiana.[11]  Blanchard was the pro hac vice owner of each of the four vessels in the flotilla.[12]

The largest boat in the flotilla was the BCI No. 3, an unpowered barge.[13]  One of the tugboats, the Colby, was behind the BCI No. 3, pushing it along, while the other tugboat, the Michael G., was positioned in front of the BCI No. 3, pulling it.[14] Moored to the starboard side of the BCI No. 3 was the Beville, a self-propelled barge.[15]  Washington was initially traveling on the

---

[9]See Motion for Summary Judgment and Memorandum in Support Thereof, Docket Entry No. 16, at 2, Exhibit A.

[10]Affidavit of Dennis Vegas, ¶ 5.

[11]See Oral and Videotaped Deposition of Nigel K. Washington, at 39, 42-43.

[12]Motion for Summary Judgment and Memorandum in Support Thereof, Docket Entry No. 16, at 2.

[13]Oral and Videotaped Deposition of Nigel K. Washington, at 39, 42-44.

[14]Id. at 43-44.

[15]Id.

Beville.[16]   He was ordered to ensure that the Beville's engine remained in gear, helping to propel the flotilla forward.[17]

Weather conditions deteriorated that night and the seas became rough.[18]   When the Colby began taking on water, Washington was ordered to transfer to the Colby to help pump water from the boat's engine room.[19]   While Washington was aboard the Colby, the lines connecting it to the BCI No. 3 broke, disconnecting the Colby from the rest of the flotilla.[20]

Sometime later the Beville, which had been left unmanned, broke free from the BCI No. 3.[21]   The captain of the Michael G., still pulling the BCI No. 3, maneuvered alongside the Beville, and a crew member from the Michael G. jumped onto the Beville.[22]   The Michael G., with the BCI No. 3 in tow, then proceeded on toward Grand Isle, leaving the Beville and Colby behind.[23]

The crew member who jumped aboard the Beville steered it alongside the Colby, and the crew tied the two ships together.[24]

---

[16]Id. at 46.

[17]Id. at 52-53.

[18]Id. at 46-47.

[19]Id. at 47-51.

[20]Id. at 51.

[21]Id. at 57-58.

[22]Id. at 58-60.

[23]Id. at 60.

[24]Id. at 58-60.

While tied together, however, the two ships collided, punching a hole in the hull of the <u>Beville</u>.[25]  The <u>Beville</u> began to rapidly take on water.[26]

The crew decided to abandon the <u>Beville</u>, and Washington jumped from the <u>Colby</u> to the <u>Beville</u> in order to retrieve his bag.[27]  As he prepared to jump back from the <u>Beville</u> to the <u>Colby</u>, the ships collided again, causing Washington to fall backward into a door frame on the <u>Beville</u>, striking his lower back.[28]  Washington alleges that this fall seriously injured his back.[29]

Washington was eventually able to make it back aboard the <u>Colby</u>.[30]  The crew members disconnected the two ships and abandoned the sinking <u>Beville</u>.[31]  The <u>Colby</u> arrived in port during the early morning hours of the following day, June 7, 2007.[32]  Washington was paid for six hours work on June 7, 2007,[33] and did not work for Blanchard again.[34]

---

[25]<u>Id.</u> at 62-63.

[26]<u>Id.</u>

[27]<u>Id.</u> at 61-63.

[28]<u>Id.</u> at 68-71.

[29]<u>Id.</u> at 71-72, 77-95.

[30]<u>Id.</u> at 63.

[31]<u>Id.</u>

[32]<u>See</u> <u>id.</u> at 65-66.

[33]<u>See</u> Motion for Summary Judgment and Memorandum in Support Thereof, Docket Entry No. 16, at 2, Exhibit A.

[34]Oral and Videotaped Deposition of Nigel K. Washington, at 76.

Washington sued Blanchard for damages arising from the injury he allegedly suffered while aboard the <u>Beville</u>, alleging negligence, unseaworthiness, and failure to provide maintenance and cure under the Jones Act and the general maritime law, or alternatively, negligence under 33 U.S.C. § 905(b),[35] a provision of the LHWCA.[36]   Blanchard now moves for summary judgment and requests that the court dismiss all of Washington's claims with prejudice.

## II.   <u>Summary Judgment Standard</u>

The court may grant summary judgment if the movant establishes that there is no genuine dispute about any material fact and that it is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(c).   An examination of substantive law determines which facts are material.   <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S. Ct. 2505, 2510 (1986).   Material facts are those facts that "might affect the outcome of the suit under the governing law."   <u>Id.</u>   A genuine issue

---

[35]33 U.S.C. § 905(b) only provides a cause of action for negligence against a vessel owner in its capacity as a vessel owner.  <u>See</u> <u>Levene v. Pintail Enters., Inc.</u>, 943 F.2d 528, 531 (5th Cir. 1991).  Claims for unseaworthiness and failure to provide maintenance and cure are general maritime law claims and may not be asserted under the LHWCA.  <u>See</u> 33 U.S.C. § 905(b) ("The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred."); <u>Guevara v. Maritime Overseas Corp.</u>, 59 F.3d 1496, 1510 n.13 (5th Cir. 1995) ("[T]he LHWCA does not cover . . . maintenance and cure actions.").

[36]<u>See</u> Plaintiff's Original Complaint, Docket Entry No. 1, §§ II., VI.-X.

of material fact exists if the evidence is such that a reasonable trier of fact could resolve the dispute in the nonmoving party's favor.  Id. at 2511.

The movant has the initial burden to inform the court of the basis for summary judgment.  Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986).   If the movant makes the required initial showings, the burden shifts to the nonmoving party to show by affidavits, depositions, answers to interrogatories, admissions, or other evidence that summary judgment is not warranted because genuine fact issues exist.  See id.  Conclusory allegations, unsubstantiated assertions, or a mere scintilla of evidence will not satisfy the nonmovant's burden.  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).  If the nonmovant fails to present specific evidence showing there is a genuine issue for trial, summary judgment is appropriate.  Topalian v. Ehrman, 954 F.2d 1125, 1132 (5th Cir. 1992).  In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  Reeves v. Sanderson Plumbing Prods. Inc., 120 S. Ct. 2097, 2110 (2000).

### III.   Jones Act Claim

#### A.    Seaman Status

The Jones Act provides that "[a] seaman injured in the course of employment . . . may elect to bring a civil action at law, with

the right of trial by jury, against the employer."   46 U.S.C.
§ 30104(a).  This provision was enacted to give seamen a statutory
cause of action in negligence to supplement the causes of action
for unseaworthiness and "maintenance and cure" already available to
them under the general maritime law.  See Chandris, Inc. v. Latsis,
115, S. Ct. 2172, 2183 (1995) (explaining that the Jones Act
"complet[ed] the trilogy of heightened legal protections
(unavailable to other maritime workers) that seaman receive").  A
plaintiff seeking to recover under the Jones Act bears the burden
to establish that he was a seaman at the time he sustained his
injury.  Barrett v. Chevron, U.S.A., Inc., 752 F.2d 129, 132 (5th
Cir. 1985).

    In Chandris the Supreme Court set out a two-part test to
determine whether an employee of a vessel owner qualifies as a
"seaman."   See Chandris, 115 S. Ct. at 2190.   First, the
"employee's duties must contribute to the function of the vessel or
to the accomplishment of its mission."  Id. (quoting McDermott
Int'l, Inc. v. Wilander, 111 S. Ct. 807, 817 (1991)) (quotation
marks omitted).  Second, and "most important," the employee "must
have a connection to a vessel in navigation (or to an identifiable
group of vessels) that is substantial in terms of both its duration
and nature."  Id.

    The purpose of the second prong of the test is to exclude from
Jones Act protection "those land-based workers who have only a
transitory or sporadic connection to a vessel in navigation

-8-

. . . ." <u>Id.</u>  The fact-finder should therefore evaluate both the duration and nature of the employee's connection to the vessel. <u>Id.</u> at 2190-91.  "[T]he ultimate inquiry is whether the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on the vessel at a given time." <u>Id.</u> at 2191.

The Fifth Circuit has adopted a simple "rule of thumb," holding that a worker must show that he spends at least thirty percent of his time in service to a vessel to be considered a seaman.  <u>Becker v. Tidewater</u>, 335 F.3d 376, 388-89 (5th Cir. 2003) (citing <u>Roberts v. Cardinal Servs. Inc.</u>, 266 F.3d 368, 375 (5th Cir. 2001)).  The Supreme Court endorsed the Fifth Circuit's thirty percent rule in <u>Chandris</u>, but articulated two important exceptions to account for employees who changed work assignments immediately prior to their injury.  <u>See</u> <u>Chandris</u>, 115 S. Ct. at 2191-92; <u>Becker</u>, 335 F.3d at 389.  Only the first exception is relevant to this case.  Under the first exception, if an employee has spent his entire career with the employer as a land-based employee, but is then assigned to a vessel "in a classic seaman's job," he is considered a seaman immediately upon the commencement of the new assignment.  <u>Chandris</u>, 115 S. Ct. at 2191; <u>Becker</u>, 335 F.3d at 389.

When a plaintiff who cannot meet the general thirty percent rule seeks to establish that he is nevertheless a seaman based on this first exception, the Fifth Circuit has required that he show that (1) he was removed from his former land-based position and

assigned to a sea-based position, (2) the reassignment was permanent, and (3) the new position would involve the plaintiff serving at least thirty percent of his time aboard a vessel. See Becker, 335 F.3d at 390. A new assignment does not change the status of a land-based worker to that of a seaman "simply because [the] worker happens to serve on a vessel before returning to work on land." Id. A temporary assignment on a vessel is not sufficient. See id.

Whether an employee is a seaman or not is a mixed question of law and fact, so "it is usually inappropriate to take the question from the jury . . . ." Id. at 386. If, however, "the facts and the law will reasonably support only one conclusion," the court should nevertheless grant summary judgment. Id.

**B.   Analysis**

Blanchard asserts that the evidence in the record conclusively shows that Washington was not a seaman at the time he sustained his injury. Therefore, argues Blanchard, Washington's Jones Act claim fails as a matter of law.

Blanchard does not assert that Washington did not meet the first prong of the Chandris test. Instead, Blanchard focuses its attack on the second prong of the Chandris test. Blanchard argues that the evidence in the record supports only one conclusion: that the nature and/or duration of Washington's connection to a vessel or an identifiable group of vessels was not substantial enough to qualify him as a seaman under the Jones Act.

-10-

The evidence in the record shows that only sixteen percent of Washington's time as a Blanchard employee -- six out of thirty-seven days -- was spent performing work involving vessels.  This is well below the Fifth Circuit's thirty-percent rule of thumb.  See Becker, 335 F.3d at 388-89.  Therefore, Washington can only show that he was a seaman if he can demonstrate that he fit within the first exception to the thirty-percent rule, i.e., that he had only recently been permanently reassigned from his land-based position "to a ship in a classic seaman's job."  Becker, 335 F.3d at 389.

Even assuming arguendo that Washington's work on the West Bay project was a classic seaman's job, the evidence in the record establishes that Washington's assignment to the West Bay project was not permanent, but was merely temporary.  Dennis Vegas, Blanchard's Human Resources Manager, stated in his affidavit that "it was never contemplated that Nigel Washington would be permanently assigned to Blanchard Contractor's marine operations."[37] Instead, "[i]t was anticipated by Blanchard Contractors that at the conclusion of his six-day hitch working on the West Bay project, . . . Nigel Washington would continue in his capacity as a land-based rigger, whether at [the] Venice gas plant or some other land-based facility."[38]

This evidence points to only one conclusion:  Washington was "merely serving an assignment on a vessel in navigation" when he

---

[37]Affidavit of Dennis Vegas, ¶ 5.

[38]Id. at ¶ 7.

was injured.  Becker, 335 F.3d at 390.  He had not been permanently

reassigned to a sea-based position connected with a particular

vessel or identifiable group of vessels.  See id.  Accordingly,

Blanchard has satisfied its initial burden to show that it is

entitled to judgment as a matter of law on the issue of

Washington's seaman status.

In response, Washington does not dispute any of the evidence

included by Blanchard with its motion for summary judgment.  He

does not include any summary judgment evidence of his own.

Instead, he merely argues that summary judgment is generally not

appropriate on the issue of the plaintiff's status as a seaman.

See St. Romain v. Indus. Fabrication & Repair Serv., Inc., 203 F.3d

376, 378 (5th Cir. 2000) ("[I]t is generally inappropriate to

dispose of a seaman's status claim on summary judgment.").  This

response is insufficient to avoid summary judgment.  See Celotex

Corp, 106 S. Ct. 2552-53 (explaining that if the party moving for

summary judgment makes the required initial showing, the burden

shifts to the nonmoving party to produce summary judgment evidence

showing that genuine fact issues exist); Becker, 335 F.3d at 386

(stating that summary judgment is required on the issue of the

plaintiff's seaman status "where the facts and law will reasonably

support only one conclusion").  Because Washington was not a seaman

at the time of his injury, he is not permitted to assert a claim

under the Jones Act as a matter of law.

## IV.   Other Claims

Washington's Original Complaint also asserts claims for negligence, unseaworthiness, and failure to provide maintenance and cure under the general maritime law, and, in the alternative, a claim for negligence under 33 U.S.C. § 905(b), a provision of the LHWCA.[39]   The court's conclusion that Washington was not a seaman at the time he sustained his injury forecloses his general maritime law claims for unseaworthiness and maintenance and cure.   These claims, like Jones Act negligence claims, are only available to seamen.[40]   See Chandris, 115 S. Ct. at 2183 (describing negligence under the Jones Act together with the general maritime law causes of action for unseaworthiness and maintenance and cure as "the trilogy of heightened legal protections (unavailable to other maritime workers) that seamen receive" (emphasis added)); Poole v. Kirby Inland Marine, LP, No. G-05-651, 2006 WL 2052877, at *3 (S.D. Tex. July 21, 2006) (granting summary judgment to the defendant on plaintiff's Jones Act claim, unseaworthiness claim, and his claim for maintenance and cure because defendant had shown that plaintiff

---

[39]See Plaintiff's Original Complaint, Docket Entry No. 1, §§ II., VI.-X.

[40]The Jones Act adopted the general maritime law's definition of seaman.   See Stewart v. Duntra Constr. Co., 125 S. Ct. 1118, 1123 (2005) ("We have . . . presumed that when the Jones Act made available negligence remedies to '[a]ny seaman who shall suffer personal injury in the course of his employment,' Congress took the term 'seaman' as the general maritime law found it.").

was not a seaman).    Therefore, the court will grant summary
judgment in Blanchard's favor on these claims.

     Blanchard's motion, however, did not address Washington's
general maritime law negligence claim or his LHWCA negligence
claim.   These two claims are not foreclosed by Washington's non-
seaman status.[41]   Accordingly, Blanchard has failed to show that it
is entitled to summary judgment on these claims.

## V.   Order

     Based on the foregoing analysis, defendant Blanchard's Motion
for  Summary  Judgment  (Docket  Entry  No.  16)  is  **GRANTED**  as  to
Washington's Jones Act claim, his unseaworthiness claim, and his

---

     [41]To the contrary, remedies under the LHWCA are available only
to  non-seaman  maritime  workers.    See  33  U.S.C.  §  902(3)(G)
(excluding from the LHWCA's coverage "a master or member of a crew
of any vessel"); Chandris, 115 S. Ct. at 2183-84 ("[T]he Jones Act
and the LHWCA are mutually exclusive compensation regimes:  'master
or member of a crew' is a refinement of the term 'seaman' in the
Jones Act; it excludes from LHWCA coverage those properly covered
under the Jones Act.").  Alternatively, if Washington does not fall
within the coverage of the LHWCA, he may have a viable negligence
claim against Blanchard under the general maritime law.  See 1
Thomas J. Schoenbaum, Admiralty and Maritime Law, § 5-2, at 169-70
(3d ed. 2001) (explaining that "[t]he negligence cause of action
[under the general maritime law] may be invoked by virtually anyone
who suffers injury or loss in an admiralty setting," but implying
that maritime workers covered under the LHWCA may not assert such
claims against their employers).    See also Levene v. Pintail
Enters. Inc., 943 F.2d 528, 531 (5th Cir. 1991) (explaining that
the LHWCA "affords employers full immunity from tort suits" brought
by their employees, except "[w]hen an employer acts in a dual
capacity as vessel owner," in which case the employer may be liable
to its employee "for acts of vessel negligence" under 33 U.S.C.
§ 905 but not for "acts taken in the capacity as the employer of
the injured worker").

claim for maintenance and cure.   The motion is **DENIED** as to

Washington's negligence claim under 33 U.S.C. § 905(b) and his

negligence claim under the general maritime law.

   **SIGNED** at Houston, Texas, on this 24th day of April, 2009.

                                   _____
                                        SIM LAKE
                               UNITED STATES DISTRICT JUDGE